**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Murray Hooper,<br><br>              Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>              Respondents. | No. CV-22-1935-PHX-SMM<br><br><u>DEATH PENALTY CASE</u><br><br>**ORDER**<br><br>**EXECUTION SCHEDULED FOR NOVEMBER 16, 2022, at 10:00 AM** |

Petitioner Murray Hooper is a state prisoner under sentence of death. He is scheduled to be executed by the State of Arizona on November 16, 2022, at 10:00 a.m.

Hooper petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition raises four claims. (Doc. 1.) Hooper also moves to stay his execution. (Doc. 3.) Respondents oppose the petition and motion, arguing that Hooper's claim is an unauthorized second or successive petition. (Doc. 7.)

**I.   BACKGROUND**

The factual and procedural background of this case has been summarized in several previous orders and opinions and will only be repeated here as relevant. *See State v. Hooper*, 145 Ariz. 538, 543, 703 P.2d 482, 487 (1985); *State v. Bracy*, 145 Ariz. 520, 524–25, 703 P.2d 464, 469–70 (1985); *Hooper v. Schriro*, CV 98-2164-PHX-SMM, 2008 WL 4542782 (D. Ariz. 2008) (memorandum of decision and order); *Hooper v. Ryan*, CV-98-02164-PHX-SMM, 2018 WL 2426176 (D. Ariz. 2018) (order); and *Hooper v. Shinn*, 985 F.3d 594 (9th Cir. 2021).

1       On December 24, 1982, a jury convicted Hooper and William Bracy of two counts of first degree murder for the murder of Pat Redmond and Helen Phelps; one count of attempted murder for the shooting of the surviving victim, Redmond's wife, Marilyn Redmond; criminal conspiracy; and other associated crimes. *See Hooper*, 145 Ariz. at 543, 703 P.2d at 487; *Bracy*, 145 Ariz. at 524–25, 703 P.2d at 469–70.

Mrs. Redmond's identification of Hooper had been a hotly contested issue in the trial court. She initially told a responding police officer that "[t]hree black men came in and robbed us," but then stated that two of the intruders were black and one was white. *Hooper*, 985 F.3d at 599, 601. Some eyewitness accounts report that Mrs. Redmond stated one or two of the assailants wore masks. *Hooper*, 145 Ariz. at 544, 703 P.2d at 488. Fifty-three days after the murders, Mrs. Redmond flew to Chicago where she identified Hooper and Bracy in live lineups. *Hooper*, 985 F.3d at 602.

Before trial, Hooper moved to suppress the identification. (ROA 748; RT 8/26/82, 8/27/82, 9/1/82.) The state trial court held a hearing on the motion (RT 8/26/82, 8/27/82, 9/1/82), where Mrs. Redmond testified extensively on her recollection of the perpetrators and her ability to view them at the time, as well as her identification of Hooper. (RT 8/26/82 at 7–143.)

Mrs. Redmond denied being shown any photographs of Hooper before viewing the live lineup in Chicago. (RT 8/26/82 at 31, 43–44.) Over the State's objection, Hooper's counsel asked Phoenix Police Detective Larry Martinsen and Investigator Dan Ryan whether they had shown Mrs. Redmond a photograph of Hooper before the live lineup in Chicago. (RT 8/27/82 at 57–59.) Both testified that they did not. (RT 8/27/82 at 60, 91.) Investigator Ryan added that he "was never present if that did occur." (RT 8/27/82 at 91.)

Following the hearing, the court determined that the pretrial identification procedure was not unduly suggestive and denied the suppression motion. (ROA 748.) On direct appeal, the Arizona Supreme Court also found the pretrial identification not unreliable "in light of Mrs. Redmond's ample opportunity to observe defendant at the time of the crime,

her high level of attention at the time of the crime, and her good level of certainty at the lineup." *Hooper*, 145 Ariz. at 545, 703 P.2d at 489.

Hooper unsuccessfully pursued post-conviction relief (PCR) in state court before filing a petition for writ of habeas corpus in this Court in 1998 (Case No. 98-cv-2164-SMM). The Court ultimately denied relief, *Hooper*, 2018 WL 2426176, and the Ninth Circuit affirmed, *Hooper*, 985 F.3d 594.

On July 19, 2022, after completion of federal review in March 2022, the State filed a notice of intent to seek a warrant of execution. On October 12, 2022, the Arizona Supreme Court issued a Warrant of Execution, fixing November 16, 2022, as the date for Hooper's execution. *State v. Hooper*, No. CR-83-0044-AP (Ariz. Oct. 12, 2022).

On October 28, 2022, the State submitted its letter to the Arizona Board of Executive Clemency (the Board), opposing Hooper's request for commutation of his death sentence. *See* (Doc. 1, Ex. 1) A revised letter was filed on November 1, 2022. In summarizing the facts surrounding Hooper's arrest in both letters, the State wrote the following:

> On February 21, 1981, Hooper and Bracey [sic] were arrested in Chicago. [Mrs. Redmond] was flown out and participated in live line ups with them. *She had previously been unable to pick them out of a paper lineup.*

(*Id.*, Ex. 1 at 11; Ex. 2 at 11) (emphasis added).

At the clemency hearing, Hooper's counsel contended that the State had never before disclosed that Mrs. Redmond had been shown a paper lineup including Hooper's photo, noting that Mrs. Redmond and law enforcement witnesses had testified at trial that she had not been shown such a lineup. Counsel for the State responded that the assertion in their letter was an error—that she had conflated a photo lineup with a composite drawing featuring Bracy and photo lineups including Ed McCall, who was a third culprit of the murders, that were shown to Mrs. Redmond—and that no evidence suggested that Mrs. Redmond had viewed a lineup with Hooper's photo. Counsel explained that two to three weeks before submitting the State's packet to the Board, she had conducted an independent review of the State's files from all of the cases that were related to the murders. (Petition for Review, Response, Attachment A at 1, lines 24-28.) Counsel also stated that "every

page of the police report that the State possessed that we have in our 20 boxes at the County Attorney's Office is what I gave the, the Board here." (*Id.*, Attachment A at 2, lines 59–61; Video of hearing at 4:21:27. She noted further that she had provided everything to Hooper's defense counsel that was in the State's packet. (*Id.*, Attachment A at 2, lines 69–70, 75–77.)

Hooper's counsel also presented the testimony of Dr. Geoffrey Loftus,[1] an expert on perception and memory. Dr. Loftus outlined the factors that could have affected the accuracy of Mrs. Redmond's recollection, including the limitations of cross-racial identification and the effects of stress and post-event information.

The Board denied commutation and a reprieve.

As relevant to these proceedings, Hooper filed a sixth PCR petition on October 31, 2022, and a seventh PCR petition four days later, the day after the clemency hearing.

On November 10, 2022, the state trial court held an evidentiary hearing on the consolidated sixth and seventh PCR petitions. Dr. Geoffrey Loftus was the only witness. He largely repeated his testimony from the clemency hearing, with addition of testimony about the effects of Mrs. Redmond's alleged exposure to the photo lineup. In addition, the State's counsel informed the court that the prosecutor who drafted the letter had "made the statement by mistake and confused composite sketches and paper lineups shown to Marilyn Redmond concerning codefendants Bracy and McCall." (*State v. Hooper*, Arizona Supreme Court No. CR-22-0268-PC, Decision Order dated Nov. 14, 2022, at 9.) Counsel avowed that Mrs. Redmond was not shown a photo lineup before her live identification of Hooper, that no evidence of any such lineup exists, and that the State's counsel "had personally verified the explanation given by the prosecutor to the" Board. (Doc. 1-1, Ex. 3.)

On November 14, 2022, the PCR court denied relief on the consolidated petition. The Arizona Supreme Court granted review but denied relief and denied Hooper's motion

---

[1] "Dr. Loftus" refers to Dr. Geoffrey Loftus. Dr. Elizabeth Loftus testified on the subject of cross-racial identifications at Hooper's trial.

- 4 -

to stay his execution. This petition followed on November 15, 2022, 24 hours before the scheduled execution.

## II. DISCUSSION

Hooper raises four claims. As described below, and notwithstanding Hooper's arguments to the contrary (Doc. 1 at 1–3), Claims 1, 2, and 3 are second or successive and the Court dismisses them as such. Claim 4, an allegation of actual innocence, is non-cognizable.

### A. Claims 1 and 2

In Claim 1 Hooper alleges, referring to the since-disavowed statement that Mrs. Redmond had been unable to pick him out of a photo lineup prior to the live lineup in Chicago, that the State "is withholding exculpatory and impeaching material evidence in violation of *Brady v. Maryland*."[2] (Doc. 1 at 11.) In Claim 2 he alleges that the State knowingly presented false evidence—testimony from Mrs. Redmond and law enforcement officials that she was not shown the photo lineup—and therefore his conviction violates *Napue v. Illinois*.[3] (Doc. 1 at 18–20.)

In denying these claims, the PCR court "accept[ed] the State's explanation of the misstatement, the State's avowal that Defendant is in possession of the same materials used by the State to prepare its letter opposing clemency, and the State's avowal that there is no evidence that Marilyn Redmond was shown a printed lineup including Defendant before she identified him in person." (PCR Ruling at 7.) The court concluded that, "[l]acking a factual basis for this claim, Defendant is not entitled to the relief he seeks." (*Id.*) The court also denied Hooper's motion to reconsider the court's denial of the emergency motion to compel discovery, filed on November 14, based on the court's acceptance of the State's avowal. (*Id.* at 2.)

---

[2] *Brady* holds that due process requires a prosecutor to disclose material exculpatory evidence to the defendant before trial. 373 U.S. 83, 87 (1963).

[3] A *Napue* violation occurs when prosecutors "knowingly use false evidence, including false testimony" or "allow[ ] it to go uncorrected when it appears." *Napue*, 360 U.S. 264, 269 (1959).

Hooper argued to the Arizona Supreme Court in a petition for review that the PCR court abused its discretion and violated the Due Process Clause when it denied the merits of Hooper's claims by accepting the State's self-contradictory, unsubstantiated avowal that its records disprove the *Brady/Napue* claims, without requiring the State to produce those same records in discovery.[4] (PR at 5–6.)

The Arizona Supreme Court found that Hooper had failed to demonstrate under *Brady* that the evidence was suppressed by the State, either willfully or inadvertently:

> [Hooper] has presented no evidence to refute the Deputy County Attorney's explanation that she made the statement by mistake and confused composite sketches and paper lineups shown to Marilyn Redmond concerning co-defendants Bracy and McCall, and the State's avowal that no such paper lineup including [Hooper] was shown to Mrs. Redmond prior to her identification of [Hooper] in person.

(PR Ruling at 9.)

The court also determined that the PCR court had not abused its discretion in denying discovery, and that "[Hooper]'s claim the State has failed to disclose a paper lineup, including allegations of misconduct and unethical conduct has no evidentiary support and no basis in fact." (PR Ruling at 10, 12.)

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes significant burdens on petitioners who try to raise new claims in "second or successive" habeas petitions. *See Burton v. Stewart*, 549 U.S. 147, 152–53 (2007) (per curiam). First, a district court must dismiss any claim presented in a second or successive habeas petition that was presented in a prior petition. 28 U.S.C. § 2244(b)(1). Second, a new claim not raised in a prior petition also must be dismissed unless (1) the claim rests on a new, retroactive rule of constitutional law or (2) the factual basis of the claim was not previously discoverable through due diligence and the new facts establish by clear and convincing

---

[4] Although Hooper expresses skepticism about the State's avowal that the prosecutor simply made an mistake in her letter to the Board, it is fair to observe that attorneys are not immune from errors in their filings. (*See* Case No. 22-CV-01923-SMM, Docs. 5, 6) (misidentifying defendant Chief of Police).

evidence that no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2244(b)(2). Even in the latter circumstance, leave of the court of appeals is required before the successive petition may be pursued in a district court. 28 U.S.C. § 2244(b)(3)(A). These requirements are jurisdictional and cannot be waived. *Burton*, 549 U.S. at 157.

The instant petition is a "second-in-time" petition, challenging the same conviction for which Hooper previously sought federal habeas relief. Hooper has neither requested nor obtained permission from the Ninth Circuit to file a second or successive petition. This does not end the inquiry, however.

The Supreme Court "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). In *Panetti*, for example, the Court held that competency-to-be-executed claims are exempt from AEDPA's limitation on second or successive petitions because such claims generally are not ripe until after the time has run to file a first habeas petition. *Id.* at 947; *see also Slack v. McDaniel*, 529 U.S. 473, 478 (2000) (declining to apply § 2244(b) to a second petition where the first was dismissed for lack of exhaustion).

The Ninth Circuit has acknowledged that the reasoning of *Panetti* is not limited to competency-for-execution claims. In *United States v. Buenrostro*, for example, the court observed that "[p]risoners may file second-in-time petitions based on events that do not occur until a first petition is concluded" if the claims raised therein "were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding." 638 F.3d 720, 725 (9th Cir. 2011); *see United States v. Lopez*, 577 U.S. 1053, 1056 (9th Cir. 2009).

In *Brown v. Muniz*, the Ninth Circuit considered whether *Brady* claims are subject to the gatekeeping provisions for second or successive petitions. 889 F.3d 661 (9th Cir. 2018). The court held that they are; a petition is second or successive "if the facts underlying the claim occurred by the time of the initial petition" and "if the petition

challenges the same state court judgment as the initial petition." *Id.* at 667. "In the case of a *Brady* claim, the violation occurs at the time the [prosecution] should have disclosed the exculpatory evidence—i.e. before trial." *Id.* at 672–73 (footnote omitted); *see Gage v. Chappell*, 793 F.3d 1159, 1165 (9th Cir. 2015) (explaining that a *Brady* claim is subject to the AEDPA's bar against successive habeas petitions when the factual predicate of the *Brady* claim existed at the time of the first federal habeas petition).

Thus, unlike a *Ford* claim, a *Brady* claim based on material that is "completely unknown to [petitioner] and his counsel at the time of trial" accrues at the time the alleged *Brady* violation occurs, not when the alleged violation is discovered. *Id.* at 672–73. The court in *Brown* explained that its decision aligned the Ninth Circuit with its "brethren in the Fourth, Tenth, and Eleventh Circuits." *Id.* at 673 n.9; *see Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1259–60 (11th Cir. 2009) (holding that all second-in-time habeas petitions based on *Brady* claims are second or successive); *Evans v. Smith*, 220 F.3d 306, 323 (4th Cir. 2000).

Hooper argues that his *Brady* claims "were unavailable for adjudication" during his initial habeas proceedings because the information was only disclosed at the clemency hearing. (Doc. 1 at 3.) Courts have rejected similar arguments.

In *Evans*, the petitioner attempted to raise a new *Brady* claim without meeting the standards governing the filing of successive petitions prescribed in § 2244(b). 220 F.3d at 322. He argued that he was "not required to meet the prerequisites for a second or successive petition in order to bring his *Brady* claim because he allegedly could not discover the *Brady* claim until after the [initial] habeas petition had already been filed." *Id.* at 323. The Fourth Circuit rejected the petitioner's argument, emphasizing that "the standards that Congress has established for the filing of second or successive petitions account for precisely the type of situation" described by the petitioner—namely, a claim based on newly discovered evidence. *Id.* (citing 28 U.S.C. § 2244(b)(2) ).

Likewise, in *United States v. Bernard*, the Fifth Circuit rejected the petitioner's argument that "the district court erred in construing his Section 2255 motion as a successive

- 8 -

petition because the facts underlying his *Brady* and *Napue* claims could not have been discovered at the time Bernard filed his initial petition." 820 F. App'x 309, 310 (5th Cir.), *cert. denied*, 141 S. Ct. 504 (2020). "While it is true that a habeas petition is not successive simply because it follows an earlier federal petition, we have made clear that claims based on a *factual* predicate not previously discoverable are successive." *Id.* (additional quotations omitted). The court concluded:

> Here, the factual predicate for Bernard's claims (the government's alleged withholding of evidence and false testimony regarding Bernard's role in a gang) existed long before Bernard filed his first habeas petition. Whether or not Bernard could have discovered those facts goes to whether he meets the requirements for filing a successive petition, not whether his motion is successive to begin with.

*Id.* at 311.

The factual predicate for Hooper's *Brady* and *Napue* claims—the alleged failure to disclose the photo lineup and the alleged false testimony that Mrs. Redmond was not shown such a lineup—existed long before he filed his first habeas petition. The claims therefore constitute a second or successive petition for which Hooper has not sought the required permission from the Ninth Circuit.

**B.  Claim 3**

Hooper alleges that Mrs. Redmond's pretrial identification was "unduly suggestive, inadmissible, and tainted her in court identification of Mr. Hooper." (Doc. 1 at 21.)  This claim too is second or successive and must be dismissed. *See* 28 U.S.C. § 2244(b)(1).

A claim "is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments . . . [or] proved by different factual allegations." *Babbitt v. Woodford*, 177 F.3d 744, 746 (9th Cir. 1999) (internal quotation marks omitted); *see Gulbrandson v. Ryan*, 738 F.3d 976, 997 (9th Cir. 2013); *Cooper v. Brown*, 510 F.3d 870, 918 (9th Cir. 2007) ("A claim is not newly presented merely because the petitioner offers new factual bases in support of a legal claim that has already been raised."); *see also Pizzuto v. Blades*, 673 F.3d 1003, 1008 (9th Cir.

2012) (explaining that "federal courts will not consider new factual grounds in support of the same legal claim that was previously presented").

In Claim 19 of his initial habeas petition, Hooper challenged the admissibility of the pretrial lineup identification, alleging it was unduly suggestive in violation of his due process rights. (Case No. CV 98-2164, Doc. 31 at 62–64; *see id.*, Doc. 78 at 70–72.) The Court denied the claim, determining that "the Arizona Supreme Court's fact finding was not unreasonable." (*Id.*, Doc. 125.) The Court also concluded that "Mrs. Redmond's pretrial identification was reliable and the lineup procedures used with her were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and therefore "the state court decision denying this claim was not contrary to or an unreasonable application of clearly established federal law." (*Id.* at 50.)

The "basic thrust or gravamen" of the new Claim 3—that the live lineup was unduly suggestive—is the same as that of the previous Claim 19. *Babbitt*, 177 F.3d at 746. Claim 3 remains second or successive despite the different "factual allegations" offered by Hooper—Dr. Geoffrey Loftus's report and the hypothetical photo lineup. *Id.*; *see Gulbrandson*, 738 F.3d at 997.

Claim 3 is denied as second or successive.

**C.     Claim 4**

Citing *House v. Bell*, 547 U.S. 518 (2006), and *Herrera v. Collins*, 506 U.S. 390 (1985), Hooper alleges he is entitled to relief because he is actually innocent of the offenses. (Doc. 1 at 24.) He argues that no juror faced with the newly developed evidence about the unreliability of Mrs. Redmond's identification—along with the "multitude of evidence developed through the years undermining the State's case-in-chief"—would find him guilty beyond a reasonable doubt.

Claim 4 appears to be a freestanding claim of "actual innocence," independent of a constitutional violation. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*,

506 U.S. at 400, 417; *Turner v. Calderon*, 281 F.3d 851, 872–73 (9th Cir. 2002) (denying certificate of appealability when petitioner neither "allege[d] an independent constitutional violation nor present[ed] affirmative proof of his innocence"). Under the AEDPA, habeas relief cannot be granted if the United States Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner. *See Williams v. Taylor*, 529 U.S. 362, 381 (2000). Because the Supreme Court has not broken sufficient legal ground on whether actual innocence is a cognizable habeas claim, Hooper may not receive relief on Claim 4. *See McQuiggen v. Perkins*, 569 U.S. 383 (2013) (citing *Herrera*, 506 U.S. at 404–05) (noting that the Court has yet to "resolve[] whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence").

Even if relief on Claim 4 was not categorically barred, Hooper has not alleged or proffered evidence of innocence that would meet the extraordinarily high theoretical threshold discussed in *Herrera*, 506 U.S. at 417 (articulating a "truly persuasive demonstration of 'actual innocence'"); *see Prescott v. Santoro*, ___ F.4th ___, 2022 WL 16943028 (9th Cir. November 15, 2022) (explaining that the court need not decide if petitioner's actual innocence claim is cognizable if petitioner's "new evidence does not meet the 'extraordinarily high' threshold showing actual innocence that would be necessary to prevail on such a claim"). The burden for a freestanding actual innocence claim would be higher than the standard used to demonstrate a fundamental miscarriage of justice— "that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup v. Delo*, 513 U.S. 298, 316, 327 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Under *Schlup*, "[a] petitioner must show that it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Gable v. Williams*, 49 F.4th 1315, 1322 (9th Cir. 2022) (citing *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc)). To do so, he must offer "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (citing *Lee*, 653 F.3d at 938).

Because Hooper's claim does not meet the less exacting standard of a gateway innocence claim under *Schlup*, he falls "short of the threshold implied in *Herrera*." *See House*, 547 U.S. at 554–55 (holding that "cast[ing] considerable doubt on his guilt" did not reach the *Herrera* threshold).

"[New evidence must be reliable, and the reviewing court 'may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.'" Prescott, 2022 WL 16943028, at *9 (quoting *Jones v. Taylor*, 763 F.3d 1241, 1247)). Based on the "total record, the court must make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Jones*, 763 F.3d at 1247).

Hooper's evidence is not reliable. His strongest evidence is an admitted misstatement, explained at great length by the State's counsel at the clemency hearing. Given that explanation combined with the State's avowal at the evidentiary hearing, there is no newly discovered evidence to support Hooper's claim.

Further, based on Hooper's citations to the trial and appellate records throughout his petition (*see* Doc. 1 at 27–37), the "multitude of evidence" in his favor is not new and has been presented either to the jury at his trial, or to the state and federal courts in the decades since his conviction, and rejected by all. Hooper's new evidence, even if found to be reliable, does not tilt those decisions in his favor, or demonstrate his actual innocence, even under the *Schlup* standard.

As Respondents correctly note in their response:

> Hooper's attempt to relitigate the pretrial lineup would, at best, impeach Marilyn Redmond's testimony identifying Hooper—it would not demonstrate his innocence. Moreover, Hooper heavily litigated Marilyn's identification at trial and on appeal. *See Hooper I*, 145 Ariz. at 544–45; *Hooper II*, 985 F.3d at 603. For example, "[t]he defense also tried to cast doubt on Marilyn's lineup identifications by, among other things, suggesting that the State's investigator, Ryan, had shown her pictures of Hooper and Bracy before the lineups. Marilyn testified that did not happen." *Hooper II*, 985 F.3d at 603. "The jury rejected [the] theory" that "Ryan had improperly influenced Marilyn's pretrial identifications of Hooper and Bracy." *Id.* at

621.

> Hooper's arguments based on alternative suspects, prosecutorial misconduct at trial, witness impeachment, and his false alibi were all addressed during his trial. *See, e.g., Hooper II*, 985 F.3d at 606–08 (alternative suspects); id. at 611–12, 613, 615–22 (misconduct); 605, 617–18 (impeachment); 621 and 621 (alibi) and 621 n.20 ("The jury obviously did not believe the alibis."). None of the lineup-related evidence or attempt to relitigate the trial affirmatively proves that Hooper is actually innocent. *See Carriger*, 132 F.3d at 476. Hooper's actual innocence must falls far short of the "extraordinarily high" standard to succeed on such a claim, and should be dismissed.

(Doc. 7 at 16–17.)

Claim 4 is denied.

### III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, a petitioner cannot take an appeal unless a certificate of appealability ("COA") has been issued by an appropriate judicial officer. Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district judge must either issue or deny a certificate of appealability when it enters a final order adverse to the applicant. If a certificate is issued, the court must state the specific issue or issues that satisfy 28 U.S.C. § 2253(c)(2).

Under § 2253(c)(2), a certificate of appealability may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a certificate of appealability will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct. *Id.*

The Court finds that reasonable jurists could debate its resolution of Claims 1, 2, and 3.

**IV.  CONCLUSION**

Claims 1, 2, and 3 are second or successive. Claim 4 is non-cognizable in habeas. Hooper is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED denying** Hooper's Petition for Writ of Habeas Corpus (Doc. 1). The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED denying as moot** Hooper's Motion for Stay of Execution (Doc. 3).

**IT IS FURTHER ORDERED granting** a COA with respect to Claims 1, 2, and 3.

**IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of this Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

Dated this 15th day of November, 2022.

_____
Honorable Stephen M. McNamee
Senior United States District Judge